HOGELAND v STATE OF MICHIGAN

Docket No. 92290. Submitted June 9, 1987, at Lansing. Decided December 5, 1988. Leave to appeal applied for.

William J. Hogeland and Patrick E. Boyle were full-time employees of the Mt. Pleasant Regional Center for Developmental Disabilities and employees of the Michigan Department of Mental Health. Each received injuries as a result of an attack by a resident patient and thereafter received workers' compensation benefits and assault pay benefits pursuant to MCL 330.1113; MSA 14.800(113).

Hogeland's physician approved his return to work but Hogeland was laid off before he actually returned. The Michigan State Accident Fund stopped payment of Hogeland's workers' compensation benefits and the assault pay benefits were stopped soon thereafter. Thereafter, Hogeland and Mt. Pleasant Regional Center entered into a voluntary pay agreement providing workers' compensation benefits to Hogeland but not assault pay benefits. Hogeland then filed an action in the Ingham Circuit Court against defendants, State of Michigan, Department of Mental Health and Mt. Pleasant Regional Center for Developmental Disabilities, seeking assault pay benefits. The circuit court, Jack W. Warren, J., ruled that Hogeland's layoff was not a termination of employment and did not disqualify him from receiving assault pay benefits. Defendants appealed from the judgment in favor of Hogeland.

Boyle returned to work on March 23, 1980, following an August 10, 1979, assault by a patient. He went on leave of absence to have knee surgery for his injury in June, 1980. His surgeon approved him to return to work without restrictions on August 18, 1980, but he did not return to work then and another doctor recommended that his leave of absence be extended until September 19, 1980. Another doctor subsequently recommended that his leave of absence be extended until November 24, 1980. Boyle received workers' compensation

REFERENCES

Am Jur 2d, Workmen's Compensation § 329.
Am Jur 2d, Labor and Labor Relations § 2612.
See the Index to Annotations under Worker's Compensation.

benefits from June 14 to October 10, 1980. He also received assault pay benefits from June 14 to August 18, 1980. Boyle later received workers' compensation benefits from October 11 to November 3, 1980, pursuant to a voluntary pay agreement with Mt. Pleasant Regional Center. No assault pay benefits were awarded in the voluntary pay agreement. Boyle then filed this action in the Ingham Circuit Court along with William Hogeland. The trial court ruled that Boyle was not entitled to assault pay benefits for the August 18 to November 3, 1980, period because defendants reasonably relied on the surgeon's statement that Boyle was able to return to work on August 18, 1980. The circuit court found that defendants were not obligated to pay assault pay benefits based on the payment of workers' compensation payments because the workers' compensation payments made from August 19 to November 3, 1980, were voluntary. Boyle cross-appealed from the judgment of no cause of action entered by the trial court.

The Court of Appeals *held:*

1. A layoff is a termination of employment, removing the employee from the payroll. Hogeland was ineligible for assault pay benefits after he was laid off. The judgment of the circuit court in regard to Hogeland is reversed.

2. Receipt of benefits pursuant to a voluntary pay agreement satisfies the statutory requirement that an employee be receiving workers' compensation benefits in order to be eligible for assault pay benefits. The receipt of workers' compensation benefits by itself is not sufficient, however, to qualify Boyle to receive assault pay benefits. By entering into the voluntary pay agreement, defendants did not necessarily admit that Boyle's disability during the period of August 18 to November 3, 1980, was caused by the attack by the patient. The denial of Boyle's claim for assault pay benefits is reversed and his case is remanded for a hearing on whether Boyle's disability from August 18 to November 3, 1980, was due to injuries related to the patient assault.

Reversed and remanded.

1. WORKERS' COMPENSATION — MENTAL HEALTH EMPLOYEES — ASSAULT PAY BENEFITS.

A Michigan Department of Mental Health employee who is injured as a result of an attack by a patient shall be awarded supplemental assault pay benefits while the employee is receiving workers' compensation benefits as a result of such injuries and the employee remains on the department's payroll (MCL 330.1113; MSA 14.800[113]).

2. WORDS AND PHRASES — LAYOFF.

A layoff is a termination of employment, removing the employee from the payroll.

3. WORKERS' COMPENSATION — MENTAL HEALTH EMPLOYEES — ASSAULT PAY BENEFITS.

The receipt of workers' compensation benefits pursuant to a voluntary pay agreement satisfies the statutory requirement that a Michigan Department of Mental Health employee be receiving workers' compensation benefits in order to be eligible for supplemental assault pay benefits; the employee still must show, however, that the disability for which such compensation is paid was caused by injuries sustained in an attack by a patient (MCL 330.1113; MSA 14.800[113]).

*Sablich, Clinton & Zolkowski, P.C.* (by *Donald Waldron, Jr.*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Irene M. Mead,* Assistant Attorneys General, for defendants.

Before: GRIBBS, P.J., and HOLBROOK, JR., and W. MOORE, JR.,* JJ.

W. MOORE, JR., J. Plaintiffs brought these complaints for assault pay benefits pursuant to MCL 330.1113; MSA 14.800(113). Following a bench trial on stipulated facts, the trial court awarded assault pay benefits to plaintiff Hogeland and entered a judgment of no cause of action on plaintiff Boyle's claim. Defendants appeal as of right from the judgment in favor of Hogeland. Boyle appeals as of right from the judgment of no cause of action. We reverse the trial court's grant of benefits to plaintiff Hogeland and reverse the trial court's finding of no cause of action as to plaintiff Boyle, remanding that case for a hearing on Boyle's claim.

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

MCL 330.1113; MSA 14.800(113) provides supplemental workers' compensation benefits for Michigan Department of Mental Health employees, up to the amount of their regular wage. These assault pay benefits are awarded when four conditions are met: (1) a health department employee, (2) is injured as a result of an attack by a patient, (3) the employee is receiving workers' compensation benefits as a result of those injuries, and (4) the employee remains on the department's payroll. MCL 330.1113; MSA 14.800(113).

Both plaintiffs were full-time employees of Mt. Pleasant Regional Center for Developmental Disabilities and employees of the Michigan Department of Mental Health. Plaintiffs' claims for assault pay benefits arise from separate factual situations.

### HOGELAND

On November 24, 1979, Hogeland was injured in an attack by a resident patient. Hogeland applied for and received workers' compensation benefits and assault pay benefits pursuant to MCL 330.1113; MSA 14.800(113). Hogeland's physician approved his return to work on June 9, 1980. On June 21, 1980, Hogeland was laid off because of a reduction in work force due to lack of funding. Hogeland had not completed his physical before June 21 and never actually returned to work before the layoff took effect. On June 7, 1980, the Michigan State Accident Fund stopped payment of Hogeland's workers' compensation benefits. The assault pay benefits were continued until June 21, 1980.

On October 14, 1980, Hogeland petitioned for a hearing with the Bureau of Workers' Disability Compensation, alleging a continuing disability re-

sulting from the injuries sustained in the patient attack on November 24, 1979. On August 11, 1981, Hogeland and Mt. Pleasant Regional Center entered into a voluntary pay agreement providing workers' compensation benefits to Hogeland from June 8, 1980, to that date and beyond. Hogeland's application for benefits was dismissed by the Bureau of Workers' Disability Compensation since voluntary payments would be made. On November 12, 1982, Hogeland redeemed his workers' compensation claim, quit his employment with the Mt. Pleasant Regional Center, waived his seniority rights and waived his claim for reemployment based on seniority.

The assault pay benefits were not reinstated in the voluntary pay agreement, and Hogeland filed two union grievances under a collective bargaining agreement regarding this claim. Both grievances were denied as untimely. Hogeland then filed this suit for assault pay benefits for the period from June 21, 1980, to November 12, 1982.

The circuit court ruled that Hogeland's layoff on June 21, 1980, was not a termination of employment and did not disqualify him from receiving assault pay benefits. The circuit court ruled that Hogeland was entitled to assault pay benefits for the period of June 21, 1980, to November 12, 1982.

There is no dispute that Hogeland met three of the requirements for receiving assault pay benefits. Defendants contend, however, that after Hogeland was laid off, effective June 21, 1980, he was no longer on the department's payroll and so was ineligible for assault pay benefits. We agree.

Hogeland argues that a layoff is factually indistinguishable from a leave of absence and that an employee can only be taken off the payroll if the employee is terminated for cause or quits. Hogeland points out that an employee who is laid off

retains his seniority and may continue his insurance. We find that a layoff is a termination of employment, removing the employee from the payroll. An employee on leave of absence may return to his job when he chooses, and his position is held open pending his return. A laid-off employee does not control his return to work, and the position he left is abolished. While laid-off employees may retain seniority rights and insurance benefits, like employees on leave of absence, the right to retain these benefits is contractual and does not change the fact that a layoff is a termination of employment. The retention of seniority rights merely affects the employer's rehiring decisions.

Plaintiff Hogeland argues that to hold that a layoff terminates an employee's eligibility for assault pay benefits would encourage the department to use layoffs to avoid payment of assault pay benefits. We note that plaintiff here does not claim that his layoff was motivated by the desire to avoid payment of assault pay benefits or was in any way improper. We thus decline to address the question whether the department could use layoffs to circumvent MCL 330.1113; MSA 14.800(113). We note, however, that this possibility is remote, since layoffs are governed by contracts and based on seniority. Under the collective bargaining agreements in force, the department would not be able to single out employees and lay them off to avoid paying assault pay benefits.

We hold that a layoff does remove an employee from the payroll and that plaintiff Hogeland is not entitled to assault pay benefits after the date of his layoff, June 21, 1980. The judgment of the circuit court in regard to Hogeland is reversed.

### BOYLE

Boyle was injured in a patient assault on August

10, 1979, and received workers' compensation benefits and assault pay benefits from August 11, 1979, to March 23, 1980, when he returned to work. In June, 1980, Boyle went on a leave of absence to have knee surgery for his injury. His surgeon approved him to return to work without restrictions on August 18, 1980. Boyle did not return to work. A chiropractic doctor recommended that his leave of absence be extended until September 19, 1980, and another physician subsequently recommended that his leave of absence be extended until November 24, 1980.

Boyle received workers' compensation benefits for the period of June 14 to October 10, 1980. Boyle also received assault pay benefits from June 14 until August 18, 1980. Boyle later received workers' compensation benefits for the period of October 11 to November 3, 1980, pursuant to a voluntary pay agreement. No assault pay benefits were awarded in the voluntary pay agreement. Boyle filed two grievances to have his assault pay benefits reinstated for the period from August 19 to November 3, 1980. Both grievances were denied as untimely.

Boyle then filed this suit in circuit court. The circuit court judge ruled that Boyle was not entitled to assault pay benefits for the August 18 to November 3, 1980, period because defendants reasonably relied on Boyle's surgeon's statement that Boyle was able to return to work on August 18, 1980. The circuit court found that defendants were not obligated to pay supplemental benefits based on the payment of workers' compensation payments because the workers' compensation payments made between August 19 and November 3, 1980, were voluntary. We reverse the trial court's ruling.

In plaintiff Boyle's case, defendants argue that he did not establish that his disability after August 18, 1980, was due to injuries sustained in the patient assault, and so was ineligible for assault pay benefits. Plaintiff Boyle argues that, since he received workers' compensation benefits during that period, he was entitled to assault pay benefits as well.

Boyle and the department entered into a voluntary pay agreement. That agreement provides for benefits in lieu of workers' compensation benefits. Receipt of benefits pursuant to a voluntary pay agreement satisfies the requirement in MCL 330.1113; MSA 14.800(113) that an employee receive workers' compensation benefits in order to be eligible for assault pay benefits. The receipt of workers' compensation benefits by itself is not sufficient, however, to qualify Boyle to receive assault pay benefits. Defendants correctly point out that MCL 330.1113; MSA 14.800(113) requires that the claimant's disability be caused by injuries sustained in a patient attack.

Defendants contend that Boyle did not establish that his disability after August 18, 1980, was caused by the patient attack. Defendants rely on the provision of the voluntary pay agreement which quotes MCL 418.831; MSA 17.237(831):

> Neither the payment of compensation or the accepting of the same by the employee or his dependents shall be considered as a determination of the rights of the parties under this act.

By entering into the voluntary pay agreement, defendants did not necessarily admit that Boyle's disability during the period of August 18 to November 3, 1980, was caused by the patient attack.

We reverse the trial court's denial of plaintiff

Boyle's claim for assault pay benefits and remand for a hearing on whether Boyle's disability during the period of August 18 to November 3, 1980, was due to injuries related to the patient assault. We do not retain jurisdiction.

Reversed and remanded.